EXHIBIT A



‹ Job Openings

# Customer Service Representative

Contact Center - Pflugerville, Texas

### Apply for This Job

Department **Contact Center**

Employment Type **Full-Time**

Minimum Experience **Entry-level**

Compensation **$ 15.00 + Bonus**

---

**CreditServe Inc. - Customer Service Representative**


**About Us**

CreditServe is a dynamic and innovative consulting company with a strong commitment to quality, innovation, and client satisfaction. We have experienced rapid growth and success over the years. With a strong focus on pushing the boundaries of what's possible, we are seeking top-tier talent that adds intrinsic value to our organization.

**Role Overview**

As a Customer Service Representative, you will play a crucial role in authenticating information provided for the purposes of funding consumer, short-term personal loans in a contact center environment. You will be eligible to earn attendance and performance-based bonuses. As a CSR you will be working as part of a team to meet goals, initiate contact, and follow up with customers while providing exceptional customer service.

**Role Responsibilities**

- Verify and process loan applicant information
- Follow-up on all customer requests via phone

- Apply a professional attitude and image for our customers
- Provide a high level of service to our customers to ensure they understand the loan process, and to create referrals
- Perform other functions as assigned by management

**Required Skills & Education**

- Customer service experience including servicing customers via phone
- Excellent professional verbal/written communication and interpersonal skills
- Flexibility and ability to quickly adapt to change
- Willing to work in a team environment
- Excellent attendance record
- Ability to work independently
- Computer savvy
- Type 30 WPM
- Basic reading, writing, and arithmetic skills
- Access to reliable transportation

**Pay:** 15.00 HR + Bonus

**Training Start Date:** July 14th, 2025, at 8:00AM

**Benefits**
401(k) 4% Match
Dental Insurance
Disability insurance
Employee assistance program
Employee discount
Flexible spending account
Health insurance
Health savings account
Life insurance
Paid sick time
Paid time off
Vision Insurance

**Schedule:** Day shift

**Work Location:** In-Office

**Why CreditServe**

At CreditServe, we take immense pride in our team's exceptional skills and their track record of delivering industry-leading results. We aim to invest in dedicated, long-term employees who exhibit a knack for rapid learning and aspire to grow alongside us. Joining our team means actively participating in the creation of cutting-edge solutions, accessing invaluable learning resources, and being part of a company that deeply appreciates its skilled workforce.

We provide a highly competitive benefits package, inclusive of a 401k plan. We are passionate about work-life balance! Expect a vibrant atmosphere and limitless avenues for personal and professional growth.

*We are not seeking leads from recruiters at this time, thank you.*

**Apply for This Job**

bambooHR®

Privacy Policy • Terms of Service

© BambooHR All rights reserved.

**EXHIBIT B**

# DAKOTA ECONOMIC DEVELOPMENT CORPORATION

## BOARD OF DIRECTORS

## RESOLUTION NO. 21-13

## RESOLUTION TO CHARTER WAHIDO LENDING AS A DEDC SUBSIDIARY ENTITY

WHEREAS:   The Crow Creek Sioux Tribal Council is the official and governing body of and for the Crow Creek Sioux Tribe ("Tribe"); and

WHEREAS:   Under the Tribe's Constitution, the Tribe shall have the power to enter into any business or activity that will better the condition of the Tribe and its members; and

WHEREAS:   Under the Tribe's Constitution, the Tribe shall have the power to do such other things as may be necessary to carry on the business and activities of the Tribe; and

WHEREAS:   The Crow Creek Sioux Tribal Council, at a duly called meeting held October 21, 2020, with a quorum present, passed the motion to authorize and approve the Charter of the Crow Creek Economic Development Corporation and appoint CCED Board of Directors ("Board"); and

WHEREAS:   The Crow Creek Sioux Tribal Council assembled in regular session on November 30, 2020, to ratify Crow Creek Sioux Tribal Council Resolutions 20-10-21-02 and 20-10-21-03 as amended to authorize the name change of the entity referenced herein and therein in Crow Creek Sioux Tribal Council Resolutions 20-10-21-02 and 20-10-21-03 to Dakota Economic Development Corporation ("DEDC") via Crow Creek Sioux Tribal Council Resolution 20-11-30-02; and

WHEREAS:   DEDC shall serve as a Tribally chartered entity, wholly and solely owned by the Tribe; and

WHEREAS:   The DEDC Charter authorizes the DEDC Board, under Sect. 4.8, to establish any subsidiary organization as may be appropriate to its business; and

WHEREAS:   The DEDC Charter authorizes the DEDC Board, under Sect. 4.9, to take such further actions as are necessary to carry out the purposes as described by the Charter, and applicable tribal or federal law; and

WHEREAS:   The DEDC Board moved to approve and charter the attached Charter of WAHIDO LENDING as a DEDC subsidiary; and

WHEREAS:   WAHIDO LENDING's rights, powers, and abilities shall be limited solely to business of WAHIDO LENDING and not obligate any other Tribal entity or enterprise or any other assets of DEDC or the Tribe;

**DEDC Board Resolution No. 21-13 to Charter Wahido Lending**

**Ex. 1**
Dakota Economic Development
Corporation Resolution No. 21-13

NOW THEREFORE BE IT RESOLVED:    The DEDC Board assembled in regular session this 16th day of February 2021, do hereby move to authorize and approve the attached Charter of WAHIDO LENDING.

## CERTIFICATION

I, as undersigned Secretary-Treasurer of the DEDC Board, hereby certify that this Resolution was adopted by the vote of: 3 For; 0 Against; 0 Abstain; 0 Not Voting, 0 Absent; during a duly called meeting, held on the 16th day of February 2021.

_____
Secretary-Treasurer, DEDC Board

Attest

_____
Vice Chairperson, DEDC Board

2

**EXHIBIT C**

WAHIDO LENDING CHARTER

Ex. 2
Wahido Lending Charter

CHARTER OF WAHIDO LENDING, A DAKOTA ECONOMIC DEVELOPMENT CORPORATION ("DEDC") SUBSIDIARY ENTITY

As approved on February 16, 2021, via DEDC Board Resolution No. 21-13

The Dakota Economic Development Corporation ("DEDC") hereby authorizes this delegation of authority for the purpose of creating an arm and entity of the Tribe to foster economic development for the Tribe and its members by the powers conferred under the Constitution of the Crow Creek Sioux Tribe ("Tribal Entities.")

ARTICLE I NAME

The DEDC subsidiary entity shall be known as WAHIDO Lending.

ARTICLE II DURATION

WAHIDO LENDING shall have a perpetual existence, subject to a dissolution process hereinafter set forth.

ARTICLE III PURPOSE

The purpose of WAHIDO LENDING shall be to fulfill government purposes of generating Tribal governmental revenues by promoting economic development and self-sufficiency. WAHIDO LENDING may also assist communities, political subdivisions of the Tribe, in accomplishing the same.

ARTICLE IV POWERS

The DEDC Board of Directors shall have the following powers regarding WAHIDO Lending:

4.1 To review existing contracts and enter into contracts with any person, partnership, or Corporation or delegate this authority as the Board of Directors deems appropriate;

4.2 To consent to a waiver of sovereign immunity limited only to WAHIDO Lending via Board resolution, in a limited fashion, in a manner consistent with this Charter. *See Art. VI*. Any such consent to limited waiver shall not have the authority or ability to stand for any waiver of the Tribe, or any other tribal entity, except for WAHIDO Lending, as provided for in the relevant Board resolution;

4.3 To prudently invest funds as are not required for immediate disbursement;

4.4 To establish and maintain such bank accounts as may be necessary or convenient;

1

Ex. 2
Wahido Lending Charter

4.5  To buy, sell, lease and otherwise acquire real estate and maintain buildings, offices, shops and other appurtenances proper and necessary for the conduct of business in accordance with applicable law.

4.6  To guarantee, purchase, hold, assign, mortgage, pledge or otherwise dispose of capital stock or any bonds, securities or other evidences of indebtedness created by any other corporation or organization that is in existence under the laws of the United States, any state, Indian tribe or nation, Tribal corporation, government or country, and to exercise all the rights, privileges and powers of such ownership.

4.7  To adopt bylaws and policies for the regulation of the internal affairs of WAHIDO Lending consistent with this Charter. The said bylaws shall be followed in all pertinent aspects by the Board of Directors, officers, employees, agents and assigns;

4.8  To take such further actions as are necessary to carry out the purposes as described by this document, and applicable tribal or federal law.


ARTICLE V SPECIAL POWERS AND LIMITATIONS

WAHIDO LENDING enjoys special powers and limitations as an instrumentality of the Tribe. DEDC is a governmental agency and an arm and instrumentality of the Crow Creek Sioux Tribe established and doing business under the Tribal Constitution and as a subordinate economic entity of the Tribe exercising governmental power. WAHIDO LENDING shall enjoy an existence as a body politic; and its Board members and employees shall be considered employees of the Tribe, notwithstanding the fact that WAHIDO LENDING's work rules and conditions may differ from that of other Tribal employees. WAHIDO LENDING and its agents and employees shall be entitled to all of the immunities enjoyed by the Tribe, including, but not limited to, immunities from suit in Federal and State courts.

5.1  As an arm of the Tribal government and an instrumentality of the Tribe, WAHIDO LENDING shall enjoy all of the Tribe's rights, privileges and immunities concerning federal, state and local taxes, regulation and jurisdiction and sovereign immunity from suit, to the same extent that the Tribe would have such rights, privileges and immunities, if it directly engaged in the activities undertaken by WAHIDO LENDING, except as specifically set out in this document.

5.2  Upon the dissolution of WAHIDO LENDING, the whole of such remaining assets shall be distributed and transferred, in cash or in kind, absolutely and without possibility of reversion, back to the control of DEDC.

5.3  Subject to the contractual and sovereign rights of the Tribe, and the restrictions contained in Articles VII and VIII and to directives or restrictions imposed by Tribal Council action, WAHIDO LENDING shall have limited control over those assets of the Tribe, and shall have the authority to manage, use and pledge the following:

**WAHIDO LENDING CHARTER**

Ex. 2
Wahido Lending Charter

5.3.1  subject to the provisions of Article XX, all revenues from the operations of WAHIDO LENDING and all other funds which WAHIDO LENDING may acquire by grant, gift, loan or other means; and

5.3.2  all interests in personal property, whether of a tangible or intangible nature, which WAHIDO LENDING may acquire by grant, gift, loan, purchase, lease or other  means.

5.4  Except in the normal course of business, no assets may be divested, sold, or expended and notwithstanding the purpose and powers set forth herein, may not be made the subject of a judgment, lien or other encumbrance absent the express approval of the Board of Directors as set forth in a written resolution. Such resolution shall state the specific purpose to which such assets are to be put, specifically define how that action will benefit the economic will-being of the Tribe, detail the factors the Board of Directors has considered in making its decision and list any third parties upon whose advice the Board of Directors has relied in reaching its decision.

## ARTICLE VI SOVEREIGN IMMUNITY

6.1  A Tribal entity is clothed by federal law with all the privileges and immunities of the Tribe, except as specifically limited by the tribal entity charter, including sovereign immunity from suit in any state, federal or Tribal court. Nothing in this Charter shall be deemed or construed to be a waiver of sovereign immunity of a Tribal entity from suit or to be a consent of the Tribal entity or the Tribe, to the jurisdiction of the United States or of any state with regard to the business or affairs of the Tribal entity or to any cause of action, case or controversy, except as provided herein.

6.2  Sovereign immunity of the Tribal entity may be waived only by express resolution of the Board of Directors after consultation with its attorney(s). All waivers of sovereign immunity must be preserved with the resolutions of the Board of Directors of continuing force and effect. Waivers of sovereign immunity are disfavored and shall be granted only when necessary to secure a substantial advantage or benefit to the Tribal entity. Waivers of sovereign immunity shall not be general but shall be specific, clear and unambiguous, and limited as to duration, grantee, transaction, property or funds, if any, of the Tribal entity subject thereto, court having jurisdiction thereto, and law applicable thereunder. Neither the power to sue and be sued provided  in this Charter, nor the charter of the respective tribal entity, nor any express waiver of sovereign immunity by resolution of the Tribal entity, nor any express waiver of sovereign immunity by resolution of the Tribal entity shall be deemed a consent to the levy of any judgment, lien or attachment upon property of the Tribal entity other than property specifically pledged or assigned, or any property of the Tribe, or a consent to suit in respect to any land within the exterior boundaries of the Crow Creek Sioux Reservation, or a consent to the alienation, attachment or encumbrance of any such land.

6.3  All inherent sovereign rights of the Tribe as a federally recognized Indian tribe with respect to the existence and activities of the tribal entity are hereby expressly reserved, including

3

Ex. 2
Wahido Lending Charter

sovereign immunity from suit in any state, federal or tribal court. Nothing in a Tribal entity charter shall be deemed or construed to be a waiver of sovereign immunity from suit of the Tribe or to be a consent of the Tribe to the jurisdiction of the United States or of any state with regard to the business or affairs of the Tribal entity or the Tribe or to any cause of action, case or controversy, except as provided herein.

6.4  Nothing in the Tribal entity charter, nor any activity of any Tribal entity, shall implicate or in any way involve the credit of the Tribe.

6.5  Nothing in this Charter, and no action taken by the Corporation pursuant to this Charter, shall be construed as permitting, recognizing, or granting any state regulatory jurisdiction or the ability to tax the property or activities of the Corporation or its employees located upon the trust lands of the Crow Creek Sioux Tribe.

## ARTICLE VII RESTRICTIONS

WAHIDO LENDING shall not be permitted to initiate, be a party to, participate in, or bring any legal action, cause of action, proceeding, claim, counterclaim, suit, or arbitration of whatever kind against the Tribe, its governmental agencies agents, officers, or employees, before any federal, state, or tribal court or administrative agency or other governmental entity of whatever kind, and any expenditure of funds by WAHIDO LENDING for any action, cause of action, proceeding, claim, counterclaim, suit or arbitration adverse to the Tribe and in which the Tribe is a party shall be considered illegal.

7.1  WAHIDO LENDING shall abide by all Tribal Council resolutions not inconsistent with this Charter or applicable law.

7.2  WAHIDO LENDING shall not adopt policies nor approve or execute agreements waiving its sovereign immunity without prior review and advice from legal counsel.

## ARTICLE VIII MATTERS REQUIRING TRIBAL CONSENT

The following actions may not be undertaken by WAHIDO LENDING without the consent and prior written approval of the Tribal Council at a regular or special meeting held for the purpose of obtaining such approval:

8.1  Entering into any agreement of any kind on behalf of the Crow Creek Sioux Tribe.

8.2  Pledging the credit of the Crow Creek Sioux Tribe.

8.3  Disposing of, pledging or otherwise encumbering real or personal property of the Crow Creek Sioux Tribe.

8.4  Waiving any right, privilege or immunity of, or releasing any obligation owed to the Crow Creek Sioux Tribe.

4

**WAHIDO LENDING CHARTER**

Ex. 2
Wahido Lending Charter

8.5  Entering into any sublease or other encumbrance or instrument respecting lands leased to WAHIDO LENDING by the Crow Creek Sioux Tribe.

## ARTICLE IX INSPECTION OF RECORDS

The DEDC Board of Directors may inspect WAHIDO LENDING records during the usual and customary hours of business, in a reasonable manner that will not unduly interfere with the regular conduct of the business of WAHIDO LENDING. Any such information so obtained shall not be used to the competitive detriment of WAHIDO LENDING.

## ARTICLE X BOARD OF DIRECTORS

WAHIDO LENDING, as a DEDC subsidiary entity, shall be governed by the DEDC Board of Directors in accordance with the DEDC Charter, approved via Tribal Council Resolution on October 19, 2020 and November 30, 2020.

## ARTICLE XI MEETINGS

The Board of Directors shall meet from time to time to conduct Board business.

11.1  Regular or Special Meetings. The Board shall provide written notice including a proposed agenda to Board members at least forty-eight (48) hours in advance of a proposed meeting. The notice must include the date, time, place and purpose of every Board of Directors meeting in order to be considered a valid Board of Directors meeting, unless a valid waiver of meeting notice is signed by all directors and included in the minutes of the Board of Directors.

11.2  Special Meetings. Special meetings of the Board may be called at the request of the Chairperson of the Board of Directors or by any two (2) directors.

11.3  Manner of Meeting. The Board of Directors may conduct regular or special meetings through the use of any means of communication by which all directors may simultaneously hear and communicate to each other. All Board actions taken without a meeting are valid if evidenced in writing, signed by the requisite number of directors and included in the minutes of WAHIDO LENDING.

11.4  Rule of Order. All Board meetings shall be conducted according to the most recent version of Robert's Rules of Order, unless waived by a majority vote of the Board members present at any meeting.

## ARTICLE XII REMOVAL OF DIRECTORS

A director may only be removed in accordance with the following:

12.1  For Cause.  The Board of Directors may remove a director from office on its own motion where the Board of Directors finds that the director has engaged in fraudulent or dishonest conduct, or gross abuse of authority or discretion , or has violated in any way the

Ex. 2
Wahido Lending Charter

director's fiduciary duty to WAHIDO LENDING or the Tribe (whether through commission or omission of an act), or where a director withholds financial information of whatever kind from the Tribe, or where a director fails to comply with the provisions of this document, or where a director is convicted of a felony while in office, or where a director is convicted of an alcohol related offense while serving on the Board of Directors, or where the director has a positive result from a drug screening, or where a director exceeds the authorities delegated in Sections 3, 4, 9, and 10.

12.2  Resignation. Any director may resign from office at any time, such resignation to be made in writing and to take effect immediately without acceptance, when delivered to the Chairperson of the Board of Directors or to the Board of Directors at a meeting of the Board, unless the notice specifies a later date, but in all such cases, said resignation shall become effective within thirty (30) days of delivery.

## ARTICLE XIII CONTRACTS

The Board of Directors may authorize any officer or agent to enter into any contract or execute and deliver any instrument in the name of and on behalf of WAHIDO LENDING, and such authority may be general or confined to specific instances.

## ARTICLE XIV LOANS

Loans or other evidence of indebtedness shall be executed in the name of WAHIDO LENDING.

## ARTICLE XV  DEPOSITS

All funds of WAHIDO LENDING not otherwise employed shall be deposited from time to time to the credit of WAHIDO LENDING in such banks, trust companies or other depositories as the Board of Directors may select.

## ARTICLE XVI RESTRICTIONS

WAHIDO LENDING is subject to the following restrictions on travel, campaign contributions, lobbying, charitable donations and loans.

16.1  Travel. Directors shall not be permitted to be compensated or reimbursed from WAHIDO LENDING funds for travel outside the continental United States, unless authorized by a resolution of WAHIDO LENDING.

16.2  Campaign Contributions. Directors and WAHIDO LENDING shall be prohibited from making campaign contributions from WAHIDO LENDING funds, and directors and officers

Ex. 2
Wahido Lending Charter

shall not be permitted to be reimbursed from WAHIDO LENDING funds for campaign contributions.

16.3  Lobbying. WAHIDO LENDING and its directors shall be prohibited from expending WAHIDO LENDING funds for lobbying, unless approved by a resolution of all members of WAHIDO LENDING.

16.4  Loans. WAHIDO LENDING may not lend money to or guarantee the personal obligation of a director or employee of WAHIDO LENDING or a member of the Tribal Council.

16.5  Indemnification. WAHIDO LENDING may indemnify any director, officer or former director of WAHIDO LENDING upon written request, with appropriate documentation, against reasonable expenses including attorney fees, judgments, fines and amounts paid in settlement actually and reasonably incurred by a director, officer or former director in connection with the defense of any action, suit or proceeding, civil or criminal, in which a director, officer or former director is made a party by reason of being or having been such a director or officer, upon a determination of the Board of Directors. Such determination shall be made in writing and by resolution included in the minutes of WAHIDO LENDING 1) by the majority vote of all voting directors; and 2) by a written opinion from the legal counsel for WAHIDO LENDING pursuant to a majority vote of all directors. The Board of Directors is prohibited from indemnifying any director or officer removed for cause.

## ARTICLE XVII INCOME

Net income from the ordinary and necessary business of WAHIDO LENDING shall be determined in  accordance with generally accepted accounting principles. Net income shall be defined as gross revenues less operating expenses. Operating expenses shall not include any deductions for capital asset funding of any kind. Earnings, interest, dividends, accumulations or accretions to the assets or the balance sheet of WAHIDO LENDING shall be considered WAHIDO LENDING income.

## ARTICLE XVIII ACCOUNTING

All WAHIDO LENDING financial statements delivered shall be prepared in accordance with generally accepted accounting principles. All accounting terms shall be interpreted, determinations shall be made, and statements shall be provided, in a form which conforms to generally accepted accounting principles.

## ARTICLE XIX FINANCIAL AND OPERATIONAL REPORTS

Financial and Operational Reports shall be provided as follows:

Ex. 2
Wahido Lending Charter

19.1  Quarterly. Complete financial statements and an operational summary report from WAHIDO LENDING shall be provided quarterly by DEDC to the Tribal Council and shall be posted and made available for inspection by Tribal members at the Tribal Council office.

19.2  Quarterly. Representatives from the Board shall report in person to Tribal Council no more frequently than quarterly at a regularly scheduled Tribal Council meeting.

## ARTICLE XX DISTRIBUTION OF NET PROFITS OR DIVIDENDS

All monthly proceeds from WAHIDO LENDING, after deduction of monthly operating expenses of all businesses under control of WAHIDO LENDING, and deduction of monthly operating of the expenses of WAHIDO LENDING and deduction of the aggregate of monthly loan payments of principal and interest due on all obligations incurred, and deduction of all other amounts pledged to be deposited as collateral or for other purposes into such various accounts as may from time to time be created, pursuant to contracts for financing, leasing or other purposes in the normal course of business, and deduction of sufficient reserves, shall be disbursed to the Tribe on a quarterly basis.

If WAHIDO LENDING accumulates excess capital by sale of assets, or some other unusual event, the Board may, in its sole discretion, taking into account such reserves as the Board deems necessary, declare and deliver a dividend to the Tribe. Dividends may be declared in such amounts and at such times as the Board may determine, provided that all such dividends shall be disbursed to the Tribe.

## ARTICLE XXI DISSOLUTION

Dissolution of WAHIDO LENDING shall occur by resolution only upon affirmative vote of a majority of the entire DEDC Board in formal session.

## ARTICLE XXII AMENDMENT

This Charter may be amended only by a majority vote of all members of DEDC Board at a regular or special meeting.

## AMENDMENT XXIII CODE OF CONDUCT FOR BOARD OF DIRECTORS

23.1  Purpose. The Board of Directors must maintain a high-level of confidence and trust with the Tribal Council.

23.2  Gifts and Gratuities:  No member of the Board of Directors shall solicit or accept  any gift or gratuity, or any other thing of value with a fair market value in excess of $100.00, from a

8

**WAHIDO LENDING CHARTER**

**Ex. 2**
Wahido Lending Charter

party contracting or seeking to contract with WAHIDO LENDING or any of its subsidiaries without approval via Board resolution.

23.3  Conflict of Interest. No member of the Board of Directors shall vote on any issues where the matters affect an immediate family member. An immediate family member is defined as a grandparent, parent, step-parent, parent-in-law, spouse, common law spouse, child, step-child, brother, step-brother, brother-in-law, sister, step-sister, sister-in-law, or grandchild.


ARTICLE XXIV APPROVAL

This amended Charter was approved on February 16, 2021, by DEDC Board Resolution No. 21-13, attached.

**EXHIBIT D**



**EXHIBIT E**



**EXHIBIT F**



**Contact Customer Care**

Click in the bottom right to live chat with our customer care team or call us at:

**(844) 446-4686**

Our phone lines are open 24/7 to provide support and answer any questions you have.

Get in touch with us today!

**Mailing Address**

Minto Money
PO BOX 58112
Minto, AK 99758

**Minto Financial Tribal Hotline**

If you have already contacted our customer care team in an attempt to resolve an issue or concern and still need additional assistance, please contact the Minto Financial Tribal Hotline at (855) 786-7726 from 10AM to 7:30PM Central Time.



CONTACT CUSTOMER CARE

Click in the bottom right to live chat with our customer care team or call us at:

**(833) 987-4837**

We're available Monday through Friday 7AM to 7PM and Saturday 8AM to 4:30PM Central Time.

MAILING ADDRESS

Wahido Lending dba River Valley Loans
PO BOX 222
Ft. Thompson, SD 57339

RIVER VALLEY LOANS TRIBAL HOTLINE

If you have already contacted our customer care team in an attempt to resolve an issue or concern and still need additional assistance, please contact the River Valley Loans Tribal Hotline at (833) 395- 7227 from 10AM to 7PM Central Time.

**EXHIBIT G**



**EXHIBIT H**

©2025 Minto Money - All Rights Reserved

IMPORTANT DISCLOSURES

**This is an expensive form of borrowing and it is not intended to be a long term financial solution.** Please note: Minto Money loans are designed to assist you in meeting your short-term borrowing needs and are not in to be a long term financial solution. Examples of emergency reasons why these loans might be used include unexpected emergencies, car repair bills, medical care, or essential travel expenses. Alternative forms of credit as a credit card cash advance, personal loan, home equity line of credit, existing savings or borrowing from a friend or relative, may be less expensive and more suitable for your financial needs. Late fees and non-suffici funds/returned item fees may apply as described in your Loan Agreement. If you do not make a payment on time, we will attempt to contact you via one or more authorized methods. We adhere to the principles of the federal Fair Debt Collection Practices Act (FDCPA). We may report your payment history to one or more credit bureaus. If you fail to repay your loan in accordance with its terms may place your loan with or sell your loan to a third-party collection agency or other company that acquires and/or collects delinquent consumer debt.

The typical application and verification process requires a phone call with our customer service team.

As part of our information collection process, we may detect additional bank accounts under the ownership of the consumer. We will consider these additional accounts to be part of the application process.

Minto Financial reviews your information in real-time to determine whether your information meets our lending criteria. You acknowledge that by completing the website application that you are applying f loan. We verify applicant information through national databases including, but not limited to, Clarity and Factor Trust and we may run your credit in order to determine your eligibility and ability to repay.

Minto Financial does not lend to residents of Alaska, Arkansas, Connecticut, District of Columbia, Illinois, Minnesota, New York, Pennsylvania, Vermont, Virginia, West Virginia. Availability of installment loans are subject to change at any time without notice at the sole discretion of Minto Financial.

Minto Financial dba Minto Money is a wholly owned subsidiary of Benhti Economic Development Corporation ("BEDCO"), a sovereign economic arm, enterprise and instrumentality of, and created under the laws of and for benefit of, the Native Village of Minto, a federally recognized sovereign American Indian tribe in Alaska, which abides by the principles of federal consumer finance laws, as incorporated under the laws of the Native Village Minto.

Loan applications fully verified and approved Monday-Thursday by 6:30 pm Central time will be funded as soon as the next business day. Loan applications fully verified and approved Friday by 6:30 pm Central time will be funded as soon as the following Monday so long as the Monday is not a bank holiday.

*Some loans may be eligible for free same-day funding if approved Mon-Fri by 2:00pm Central Time. Deposit times may vary depending on your financial institution. Same-day funding is not available in all states. Minto M not responsible for any additional charges applied by your financial institution. Please note, errors or omissions in providing your bank or card information in the Disbursement and Payment Choice Authorization section cause delays.

Please note that errors in your application, particularly with bank routing and account numbers, will impact your ability to fund and cause delays.

Our website(s) use cookies and similar technologies, both for its internal and operational purposes and to market to you (such as to retarget ads to you when you visit other sites across the Internet).

©2025 River Valley Loans - All Rights Reserved

IMPORTANT DISCLOSURES

**This is an expensive form of borrowing and it is not intended to be a long term financial solution.** Please note: River Valley loans are designed to assist you in meeting your short-term borro needs and are not intended to be a long term financial solution. Examples of emergency reasons why these loans might be used include unexpected emergencies, car repair bills, medical care, essential travel expenses. Alternative forms of credit, such as a credit card cash advance, personal loan, home equity line of credit, existing savings or borrowing from a friend or relative, may be expensive and more suitable for your financial needs. Late fees and non-sufficient funds/returned item fees may apply as described in your Loan Agreement. Our fees are disclosed in your loan agreement. If you do not make a payment on time, we will attempt to contact you via one or more authorized methods. We adhere to the principles of the federal Fair Debt Collection Practices (FDCPA). We may report your payment history to one or more credit bureaus. If you fail to repay your loan in accordance with its terms, we may place your loan with or sell your loan to a third-p collection agency or other company that acquires and/or collects delinquent consumer debt.

The typical application and verification process requires a phone call with our customer service team.

As part of our information collection process, we may detect additional bank accounts under the ownership of the consumer. We will consider these additional accounts to be part of the application process.

River Valley Loans reviews your information in real-time to determine whether your information meets our lending criteria. You acknowledge that by completing and submitting the website application that you are applying for a loan. We verify applicant information through national databases including, but not limited to, Clarity and Factor Trust and we may run your credit in ord determine your eligibility and ability to repay.

River Valley Loans does not lend to residents of Arkansas, Connecticut, District of Columbia, Illinois, Minnesota, New York, Pennsylvania, South Dakota, Vermont, Virginia, West Virginia. Availabi installment loans are subject to change at any time without notice at the sole discretion of River Valley Loans.

Wahido Lending dba River Valley Loans is a wholly owned subsidiary of Dakota Economic Development Corporation ("DEDC"), a sovereign economic arm, enterprise, and instrumentality of, and created under the laws of and for the benefit of, the Crow Creek Sioux Tribe, a federally recognized sovereign American Indian tribe in South Dakota, which abides by the principles of federal consumer finance laws, as incorporated under the laws of the Crow Creek Sioux Tribe.

Loan applications fully verified and approved Monday-Thursday by 6:30 pm Central time will be funded as soon as the next business day. Loan applications fully verified and approved Friday by pm Central time will be funded as soon as the following Monday so long as the Monday is not a bank holiday.

Our website(s) use cookies and similar technologies, both for its internal and operational purposes and to market to you (such as to retarget ads to you when you visit other sites across the Inte

1

**EXHIBIT I**



1

**EXHIBIT J**

**Minto Financial Services Licensing & Regulatory Commission**
P.O. Box 58112, Minto, Alaska 99758

Ch'echalyu    Bedzeyh Ti Xwt' ana    Tonidra Ghetslina    Tsiyhyu 

Artwork by Knowland Silas

THIS LICENSE MUST BE CONSPICIOUSLY POSTED IN THE PUBLIC OFFICE

**(RENEWAL) LICENSE #2019-001**

# CERTIFICATE OF LICENSURE
# FINANCIAL SERVICES COMPANY

*This is to Certify,* that pursuant to and in accordance with the Tribal Credit Code of the Minto Tribe ("Tribe"), I, the undersigned, as Commissioner of the Minto Financial Services Licensing & Regulatory Commission, do hereby issue this license for purposes of the Tribe's consumer lending business to the below-named company:

Minto Financial dba Minto Money
205 Lakeview Drive, Suite 7
Minto, AK 99758

subject to revocation as provided by Tribal Law. This license is a revocable privilege to do business within the jurisdiction of the Minto Tribe. The issuance of this License is based on the Application filed with the Commission on June 10, 2025. This License has an **Issuance/Effective Date of June 3, 2025**, and an **Expiration Date of June 3, 2027**.

This license cannot be transferred or assigned and continues in effect until terminated/suspended under Tribal Law or until the Expiration Date.

*In Witness Whereof,* I have hereto set my hand on the date appearing below.

Date: June 10, 2025

SHANE THIN ELK, COMMISSIONER
Minto Financial Services Licensing &
Regulatory Commission

"In the old days everybody belonged to a clan. In Minto there are four clans:
Caribou – (Bedzeyh Ti Xwt'ana) Fishtail – (Ch'echalyu) Paint – (Tsiyhyu) Middle – (Tonidra Gheltslina)"

1



THIS LICENSE MUST BE CONSPICIOUSLY POSTED IN THE PUBLIC OFFICE

**LICENSE #2021-005**

## CERTIFICATE OF LICENSURE
## FINANCIAL SERVICES COMPANY

*This is to Certify,* that pursuant to and in accordance with the Tribal Credit Code of the Crow Creek Sioux Tribe ("Tribe"), I, the undersigned, as Commissioner of the Crow Creek Financial Services Licensing & Regulatory Commission, do hereby issue this license for purposes of the Tribe's consumer lending business to the below-named company:

Wahido Lending d/b/a River Valley Loans
P.O. Box 246
Ft. Thompson, SD 57339

subject to revocation as provided by Tribal Law. This license is a revocable privilege to do business within the jurisdiction of the Crow Creek Sioux Tribe. The issuance of this License is based on the Application filed with the Commission on August 5, 2021. This License has an **Issuance/Effective Date of September 7, 2023**, and an **Expiration Date of September 7, 2025**.

This license cannot be transferred or assigned and continues in effect until terminated/suspended under Tribal Law or until the Expiration Date.

*In Witness Whereof,* I have hereto set my hand on the date appearing below.

Date: September 5, 2023.

SHANE THIN ELK, COMMISSIONER
Crow Creek Financial Services Licensing &
Regulatory Commission